UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DIANE BARNWELL,                         :

                        Plaintiff,      :    13 Civ. 3683 (HBP)

    -against-                           :    OPINION
                                             AND ORDER
CAROLYN W. COLVIN, acting               :
Commissioner of Social Security,
                                        :
                        Defendant.      :
----------------------------------X


            PITMAN, United States Magistrate Judge:


I.   Introduction


            Plaintiff, Diane Barnwell, brings this action pursuant

to section 205(g) of the Social Security Act (the "Act"), 42

U.S.C. § 405(g), seeking judicial review of a final decision of

the Commissioner of Social Security ("Commissioner") denying her

application for supplemental security income benefits ("SSI").

Plaintiff has moved for judgment on the pleadings under Rule

12(c) of the Federal Rules of Civil Procedure (Notice of Motion,

dated January 7, 2014 (Docket Item 11)).  The Commissioner has

filed a cross-motion also seeking judgment on the pleadings

(Notice of Motion, dated June 20, 2014 (Docket Item 24)).  The

parties have consented to my exercising plenary jurisdiction in

this matter pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, I deny the defendant's motion for judgment on the pleadings and order that the case be remanded for further proceedings consistent with this opinion.

II.  <u>Facts</u>

A.  <u>Procedural Background</u>

Plaintiff filed an application for SSI on December 10, 2007 alleging that she had been disabled since November 30, 2007 (Tr.[1] 165).  Plaintiff alleges she was disabled due to hypertension,[2] diabetes, gastroesophageal reflux disease,[3] anemia[4] and depression (Tr. 24).  The Social Security Administration ("SSA") denied plaintiff's application, finding that she was not disabled

---

[1]"Tr." refers to the administrative record that the Commissioner filed with her answer, pursuant to 42 U.S.C. § 405(g) (<u>see</u> Notice of Filing of Administrative Record, dated June 28, 2013 (Docket Item 8)).

[2]Hypertension is "persistently high arterial blood pressure."  <u>Dorland's Illustrated Medical Dictionary</u>, ("Dorland's") at 799 (27th ed. 1998).

[3]Gastroesophageal reflux disease is "a chronic, pathologic, potentially life-threatening disease manifested by the various sequelae associated with reflux of the stomach and duodenal contents into the esophagus, which is principally characterized by heartburn and regurgitation."  <u>Dorland's</u> at 582.

[4]Anemia is "a reduction below normal in the number of erythrocytes per cu. mm., in the quantity of hemoglobin, or in the volume of packed red cells per 100 ml. of blood which occurs when the equilibrium between blood loss . . . and blood production is disturbed."  <u>Dorland's</u> at 76.

(Tr. 87).  Plaintiff timely requested and was granted a hearing before an Administrative Law Judge ("ALJ") (see Tr. 65).  ALJ Newton Greenberg conducted a hearing on January 5, 2009 (Tr. 65-74).  In a decision dated January 23, 2009, ALJ Greenberg determined that plaintiff was not disabled within the meaning of the Act from November 30, 2007 through the date of the decision (Tr. 76-82).  On February 4, 2009, plaintiff requested review by the Appeals Council (Tr. 121).

The Appeals Council remanded plaintiff's case for further consideration on July 29, 2010 (Tr. 84-86).  On March 15, 2011, ALJ Lucian Vecchio held a second hearing (Tr. 34-64) and rendered a decision on September 9, 2011, again finding plaintiff was not disabled during the relevant time period (Tr. 18-29).  The ALJ's decision became the final decision of the Commissioner on April 10, 2013 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Plaintiff commenced this action seeking review of the Commissioner's decision on May 31, 2013 (Complaint (Docket Item 1)).  On January 7, 2014, plaintiff moved for judgment on the pleadings (Docket Item 11), and on June 20, 2014 defendant cross-moved for judgment on the pleadings (Docket Item 24).

3

B.   Plaintiff's
     Social Background

Plaintiff was born on November 27, 1963 and was forty-four years old at the alleged onset of her disability on November 30, 2007 (Tr. 28).  Plaintiff holds a high school diploma (Tr. 38).  She currently lives alone (Tr. 40), but previously resided with her daughter during at least part of the alleged period of disability (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, dated January 7, 2014, (Docket Item 12) ("Pl.'s Mem.") at 2; see Tr. 248).  Plaintiff's last employment was in 2005 when she worked for three or four months as a car transporter for a rental car service (Tr. 38).  Prior to that, she was employed for five years as a mail handler by the United States Postal Service (Tr. 38, 43).

C.   Plaintiff's
     Medical Background[5]

Plaintiff suffers from a variety of conditions, including diabetes, hypertension, anemia, gastroesophageal reflux disease and depression (Tr. 24).  She began seeing a physician for depression in 2003 (Tr. 588-93), and related medical notes

---

[5]I recite only those facts relevant to my review.  The administrative record more fully sets out plaintiff's medical history (Docket Item 8).

4

from 2007 indicate that she was suffering from fatigue (Tr. 620), emotional issues (Tr. 688) and stress (Tr. 614).  She has regularly been prescribed Zoloft, Benadryl and other medications (see Tr. 701).  Plaintiff has also experienced physical injuries, including a sprain of her knee and elbow (Tr. 501, 783).

### 1.   Dr. Ravid, Dr. Finger and Dr. Apacible

On February 11, 2008, plaintiff was interviewed by Dr. Renee Ravid, an SSA consultative psychiatrist (Tr. 248-49).  Dr. Ravid found that plaintiff's "recent memory is somewhat impaired" (Tr. 248) and that plaintiff had "impairments in sustained concentration" (Tr. 249).  In addition, Dr. Ravid found that plaintiff was impaired "in her ability to respond appropriately to supervision, co-workers and work pressures" (Tr. 249).

On that same date, plaintiff was examined by Dr. Howard Finger, an SSA consultative examiner (Tr. 250-52).  Dr. Finger found that plaintiff was "mildly limited" in the amount of time she was able to stand, the distance she was able to walk and in her ability to "lift, carry, push/pull, climb stairs" (Tr. 252).

Dr. Apacible, an SSA non-examining specialist, reviewed plaintiff's file on February 27, 2008 (Tr. 253-69).  Dr. Apacible concluded that plaintiff had mild "restriction of activities of

daily living," mild "difficulties in maintaining social function-
ing," and moderate "difficulties in maintaining concentration,
persistence or pace" (Tr. 263).  Dr. Apacible found, based upon
review of plaintiff's files, that she was "capable of simple,
entry level work" (Tr. 269).

### 2.   Dr. Taneja

On December 22, 2008, Dr. Navneet Taneja, one of
plaintiff's treating physicians, completed a Psychiatric-Psycho-
logical Impairment Questionnaire, noting that plaintiff had major
depression and that her treatment included bi-monthly group
therapy sessions (Tr. 276) along with Zoloft and Benadryl (Tr.
281).  Dr. Taneja also indicated that plaintiff could perform
"low stress" work (Tr. 282), but that she would likely be absent
from work three or more times a month as a result of her condi-
tions (Tr. 283).

### 3.   Dr. Reddy

On December 28, 2009 Dr. Navin Reddy, another treating
physician, completed a Psychiatric-Psychological Impairment
Questionnaire indicating that plaintiff had a major depressive
disorder (Tr. 510), but also noting that she was capable of
performing work under "moderate stress" (Tr. 516).  Dr. Reddy's

treatment notes of February 2, 2010 indicate that plaintiff continued to have a major depressive disorder and that she had trouble sleeping and was irritable (Tr. 769).

### 4.  Dr. Publico

Dr. Lourdes Publico was plaintiff's treating physiatrist[6] in 2009 (Tr. 501).  The records of Dr. Publico's treatment are not included in the administrative record aside from a completed Multiple Impairment Questionnaire dated November 24, 2009 (Tr. 501-08).[7]  In the questionnaire, Dr. Publico diagnosed plaintiff with a knee sprain, depression, hypertension, diabetes and chronic pain (Tr. 501).  Except for plaintiff's chronic pain, these conditions appear to have been diagnosed "by history" (Tr. 501).  Dr. Publico also indicated on the questionnaire that plaintiff could only sit for two hours in a typical eight hour work day and could only stand for one hour (Tr. 503).  Dr. Publico also noted that plaintiff would likely be absent from

---

[6]A physiatrist is a medical doctor who specializes in physical medicine.  Dorland's at 1291.

[7]The questionnaire is difficult to read, and the parties disagree on the length of Dr. Publico's treatment relationship: plaintiff asserts that Dr. Publico began treating her in 2003 (Pl.'s Mem. at 19), while the Commissioner claims treatment began in 2009 (Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, dated June 20, 2014 (Docket Item 25) ("Comm'r Mem.") at 19).

work for three or more days every month as a result of her various conditions (Tr. 506).

      5.   Dr. Salon and
           <u>Dr. Fujiwaki</u>

On January 10, 2011, plaintiff was examined by Dr. Aurelio Salon, an SSA consultative examiner (Tr. 780-89).  He noted plaintiff's history of diabetes, depression, hypertension, obesity and her then current right elbow sprain (Tr. 783).  On the basis of his examination, he found that plaintiff was not restricted in her ability to sit, stand, climb, push, pull or carry (Tr. 783).

Dr. Haruyo Fujiwaki, an SSA consultative psychologist, interviewed plaintiff on January 10, 2011 (Tr. 773-76).  He completed a Medical Source Statement of Ability to Do Work-Related Activities on January 24, 2011 (Tr. 777-79).  He indicated that while plaintiff had no issues with simple instructions, she was moderately to markedly limited in understanding, remembering, carrying out and making judgments on complex instructions in a work-related environment (Tr. 777).  He also indicated that plaintiff had moderate limitations in responding appropriately in work situations (Tr. 778).

8

6.   Dr. Rosen and
Dr. Wiegand

Questionnaires completed by Dr. Anna Rosen and Dr. Jessica Wiegand were also submitted to the Appeals Council after the ALJ's decision (see Tr. 4).

On October 27, 2011, Dr. Rosen completed a Psychiatric-Psychological Impairment Questionnaire; the questionnaire appears to state that Dr. Rosen began treating plaintiff on September 23, 2010[8] for a major depressive disorder (Tr. 796-803).  Dr. Rosen wrote that plaintiff's depression was "severe without psychosis" (Tr. 796).  She nevertheless found plaintiff's prognosis to be "good" (Tr. 796), with moderate limitations in memory and concentration (Tr. 799) and the ability to tolerate low work stress (Tr. 802).

On August 30, 2012, Dr. Wiegand completed a Psychiatric-Psychological Impairment Questionnaire which also appears to state that she started treating plaintiff for major depression on September 23, 2010[9] (Tr. 807-14).  Dr. Wiegand

_____

[8]Under "date of first treatment" Dr. Rosen has written "9/23/2010"; however, under "earliest date that the description of symptoms and limitations in this questionnaire applies," Dr. Rosen wrote "do not understand question" and "since my eval[uation] of 9/15/11" (Tr. 803).

[9]Under "date of first treatment" Dr. Wiegand has written "9/23/2010"; however, under "earliest date that the description
(continued...)

found that plaintiff suffered from marked limitations in her ability to remember locations and work-like procedures, to maintain attention and concentration for extended periods, to perform activities within a schedule, to complete a normal workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without unreasonably numerous and unreasonably lengthy rest periods (Tr. 810-11).  She also found that plaintiff suffered from several other moderate limitations related to memory, concentration and social functioning (Tr. 810-11).  Dr. Rosen found that plaintiff would require three or more days of absences per month in order to treat her symptoms and would be expected to experience episodes of decompensation (Tr. 801, 803).

     D.    Proceedings
         Before the ALJ

        1.    Plaintiff's
            Testimony

Plaintiff testified that the symptoms of her depression were pain (Tr. 39) and inability to sleep (Tr. 40).  She also

---

[9](...continued)
of symptoms and limitations in this questionnaire applies," Dr. Wiegand wrote "3/28/11 - patient began treatment at center for counseling at North General[.]  [S]ymptoms were present prior" (Tr. 814).

reported fatigue (Tr. 41) and that her medication did not relieve her symptoms (Tr. 40).  She testified that her daily activities are fairly limited -- she does not cook much, but she does do some laundry and cleaning (Tr. 40).

### 2.   Medical Expert Testimony

Dr. Edward Halperin, the SSA medical expert, examined plaintiff's medical records and interviewed her during the hearing before the ALJ.  His conclusion was that she had "low grade depression" that was not at listing level and that her diabetes and hypertension were controlled (Tr. 48).

### 3.   Vocational Expert Testimony

The testimony from the vocational expert assumed the plaintiff could perform sedentary work, with no exertional limitations but with non-exertional limitations of "mild to moderate difficulty in dealing with the public," coworkers and supervisors, and "mild limitations in memory" (Tr. 60-61).  The vocational expert testified that, based on this description, plaintiff would be unable to perform her past relevant work (Tr. 61).  Plaintiff could, however, perform the work of a jewelry bench worker (Tr. 61) or a jewelry stone setter (Tr. 62), even if

she had the additional impairment of mild limitations in concen-
tration (Tr. 61-62).  The vocational expert testified that if
plaintiff had moderate limitations in concentration or was absent
three or more times a month, she would be unable to perform these
jobs because of their productivity requirements, and that there
was no other work in the national economy that plaintiff could
perform with these additional restrictions (Tr. 62-63).

III.  <u>Analysis</u>

    A.  Applicable
       <u>Legal Principles</u>

       1.  <u>Standard of Review</u>

      The Court may set aside the final decision of the
Commissioner only if it is not supported by substantial evidence
or if it is based upon an erroneous legal standard.  42 U.S.C.
§ 405(g); <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (<u>per
curiam</u>); <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012);
<u>Burgess v. Astrue</u>, 537 F.3d 117, 127 (2d Cir. 2008).

      The Court first reviews the Commissioner's decision for
compliance with the correct legal standards; only then does it
determine whether the Commissioner's conclusions were supported
by substantial evidence.  <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d

Cir. 1999); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).
"Even if the Commissioner's decision is supported by substantial
evidence, legal error alone can be enough to overturn the ALJ's
decision," Ellington v. Astrue, 641 F. Supp. 2d 322, 328
(S.D.N.Y. 2009) (Marrero, D.J.); accord Johnson v. Bowen, supra,
817 F.2d at 986, but "where application of the correct legal
principles to the record could lead to only one conclusion, there
is no need to require agency reconsideration," Johnson v. Bowen,
supra, 817 F.2d at 986.

       "'Substantial evidence' is 'more than a mere scintilla.
It means such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.'" Talavera v. Astrue,
supra, 697 F.3d at 151, quoting Richardson v. Perales, 402 U.S.
389, 401 (1971).  Consequently, "[e]ven where the administrative
record may also adequately support contrary findings on particu-
lar issues, the ALJ's factual findings 'must be given conclusive
effect' so long as they are supported by substantial evidence."
Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam),
quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).
Thus, "[i]n determining whether the agency's findings were
supported by substantial evidence, 'the reviewing court is
required to examine the entire record, including contradictory
evidence and evidence from which conflicting inferences can be

drawn.'" Selian v. Astrue, supra, 708 F.3d at 417, quoting

Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per

curiam). Where, as here, the claimant has submitted new evidence

to the Appeals Council following the ALJ's decision, such evi-

dence becomes part of the administrative record. See Brown v.

Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Perez v.

Chater, 77 F.3d 41, 45 (2d Cir. 1996).

            2.  Determination
                of Disability

     A claimant is entitled to SSI benefits if she can

establish an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to

last for a continuous period of not less than twelve months."

42 U.S.C. § 1382c(a)(3)(A); see also Barnhart v. Walton, 535 U.S.

212, 217-22 (2002) (both impairment and inability to work must

last twelve months).[10]  The impairment must be demonstrated by

"medically acceptable clinical and laboratory diagnostic tech-

---

[10]The standards that must be met to receive SSI benefits
under Title XVI of the Act are the same as the standards that
must be met in order to receive disability insurance benefits
under Title II of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24
(2003).  Accordingly, cases addressing the latter are equally
applicable to cases involving the former.

niques," 42 U.S.C. § 1382c(a)(3)(D), and it must be "of such
severity" that the claimant cannot perform her previous work and
"cannot, considering [the claimant's] age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy." 42 U.S.C. §
1382c(a)(3)(B). Whether such work is actually available in the
area where the claimant resides is immaterial. 42 U.S.C. §
1382c(a)(3)(B).

In making the disability determination, the Commis-
sioner must consider: "(1) the objective medical facts; (2)
diagnoses or medical opinions based on such facts; (3) subjective
evidence of pain or disability testified to by the claimant or
others; and (4) the claimant's educational background, age, and
work experience." Brown v. Apfel, supra, 174 F.3d at 62; DiPalma
v. Colvin, 951 F. Supp. 2d 555, 565 (S.D.N.Y. 2013) (Peck, M.J.).

The Commissioner must follow the five-step process
required by the relevant regulations. 20 C.F.R. §
416.920(a)(4)(i)-(v). The first step is a determination of
whether the claimant is engaged in substantial gainful activity.
20 C.F.R. § 416.920(a)(4)(i). If she is not, the second step
requires determining whether the claimant has a "severe medically
determinable physical or mental impairment." 20 C.F.R. §
416.920(a)(4)(ii). If she does, the inquiry at the third step is

15

whether any of these impairments meet one of the listings in Appendix 1 of the regulations.  20 C.F.R. § 416.920(a)(4)(iii). If the answer to this inquiry is affirmative, the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not meet any of the listings in Appendix 1, step four requires an assessment of the claimant's residual functional capacity ("RFC") and whether the claimant can still perform her past relevant work given her RFC.  20 C.F.R. § 416.920(a)(4)(iv); see Barnhart v. Thomas, supra, 540 U.S. at 24-25.  If she cannot, then the fifth step requires assessment of whether, given claimant's RFC, she can make an adjustment to other work.  20 C.F.R. § 416.920(a)(4)(v).  If she cannot, she will be found disabled.  20 C.F.R. § 416.920(a)(4)(v); see Selian v. Astrue, supra, 708 F.3d at 417-18; Talavera v. Astrue, supra, 697 F.3d at 151.

RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  To determine RFC, the ALJ "identif-[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),(c), and (d) of 20 [C.F.R. §§] 404.1545 and 416.945." Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (per

curiam), quoting SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996).
The results of this assessment determine the claimant's ability
to perform the exertional demands of sustained work and may be
categorized as sedentary, light, medium, heavy or very heavy.  20
C.F.R. § 416.967; see Rodriguez v. Apfel, 96 Civ. 8330 (JGK),
1998 WL 150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).
This ability may then be found to be further limited by non-
exertional factors that restrict claimant's ability to work.  See
Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended in
part on other grounds on reh'g, 416 F.3d 101 (2d Cir. 2005); Bapp
v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

The claimant bears the initial burden of proving
disability with respect to the first four steps.  Selian v.
Astrue, supra, 708 F.3d at 418; Burgess v. Astrue, supra, 537
F.3d at 128.  Once the claimant has satisfied this burden, the
burden shifts to the Commissioner to prove the final step -- that
the claimant's RFC allows the claimant to perform some work other
than her past work.  Selian v. Astrue, supra, 708 F.3d at 418;
Butts v. Barnhart, supra, 388 F.3d at 383.

In some cases, the Commissioner can rely exclusively on
the medical-vocational guidelines ("the Grid") contained in
C.F.R. Part 404, Subpart P, Appendix 2 when making the determina-
tion at the fifth step.  Gray v. Chater, 903 F. Supp. 293, 297-98

17

(N.D.N.Y. 1995).  "The Grid takes into account the claimant's RFC in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy."  Gray v. Chater, supra, 903 F. Supp. at 298; Butts v. Barnhart, supra, 388 F.3d at 383.

The Grid may not be relied upon exclusively in cases where the claimant has significant non-exertional limitations that restrict her ability to work.  Butts v. Barnhart, supra, 388 F.3d at 383; Bapp v. Bowen, supra, 802 F.2d at 605-06.  When a claimant suffers from a non-exertional limitation such that she is "unable to perform the full range of employment indicated by the [Grid]," Bapp v. Bowen, supra, 802 F.2d at 603, or the Grid fails "to describe the full extent of a claimant's physical limitations," Butts v. Barnhart, supra, 388 F.3d at 383, the Commissioner must introduce the testimony of a vocational expert in order to prove "that jobs exist in the economy which claimant can obtain and perform."  Butts v. Barnhart, supra, 388 F.3d at 384 (internal quotation marks and citation omitted); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.").

B.   The ALJ's Decision

The ALJ applied the five-step process described above and relied on the plaintiff's testimony and medical evidence in making his determination that plaintiff was not disabled within the meaning of the Act between November 30, 2007, the date the application was filed, and September 9, 2011, the date the decision was rendered (Tr. 22-29).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 30, 2007, the date of her application (Tr. 24).  At step two, the ALJ found that the plaintiff had several medically determinable impairments that were severe, including hypertension, diabetes, gastro-esophageal reflux disease, anemia and depression (Tr. 24).  The ALJ also found that these conditions had existed at a severe level for a continuous period greater than twelve months (Tr. 24).  At step three, the ALJ found that the plaintiff's impair-ments did not meet or were not medically equal to the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24).

At step four, the ALJ determined that plaintiff's RFC is "slightly less than the full range of sedentary work," as

defined in 20 C.F.R. § 416.967(a)[11] (Tr. 28).  The ALJ found that plaintiff would be limited to simple tasks because of her mild limitations in memory (Tr. 25).  Additionally, she would be limited to work involving less interaction with the public, coworkers and supervisors (Tr. 28).  The ALJ found that plaintiff's RFC left her unable to perform any previous work (Tr. 28).

The ALJ seems to have based his assessment of plaintiff's RFC largely on medical opinions (see Tr. 26-27).  He accorded the medical expert opinion "great weight" because it was "well supported and not inconsistent with the other substantial evidence" (Tr. 27).  He accorded the agency medical consultants "considerable weight" for the same reasons (see Tr. 27).  This included Dr. Ravid (Tr. 248-49), Dr. Finger (Tr. 250-52), Dr. Fujiwaki (Tr. 773-79) and Dr. Salon (Tr. 780-90).  The ALJ accorded "little weight" to the opinions of plaintiff's treating doctors because they were "not supported by objective clinical findings, and were inconsistent with other substantial evidence"

---

[11]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

(Tr. 27).  This included Dr. Publico, Dr. Taneja and Dr. Reddy (see Tr. 27).  The ALJ also found that plaintiff's testimony regarding the "intensity, persistence and limiting effects" of her symptoms were not credible "to the extent they are inconsistent with the above RFC assessment" (Tr. 26).

At step five, the ALJ elicited testimony from a vocational expert that a person with plaintiff's RFC would be able to work as either a jewelry bench worker or a jewelry stone setter (Tr. 29).  The ALJ therefore found that plaintiff could make a successful adjustment to other work and that such work exists in significant numbers in the national economy (Tr. 29).  As a result, the ALJ found plaintiff was not disabled (Tr. 29).

  C.  Analysis of the
   ALJ's Decision

I first review the correctness of the legal standards applied by the ALJ.  See Tejada v. Apfel, supra, 167 F.3d at 773; Johnson v. Bowen, supra, 817 F.2d at 985; Ellington v. Astrue, supra, 641 F. Supp. 2d at 327-28.  Plaintiff argues that the ALJ committed legal error by failing to apply the treating physician rule properly and by failing to assess the plaintiff's credibility properly (Pl.'s Mem. at 15-19, 21).  Plaintiff also argues that the additional evidence submitted to the Appeals Council

warrants remand (Pl.'s Mem. at 23).  I assess each argument below.

                    1.    Treating
                            Physician Rule

Plaintiff contends that the ALJ misapplied the treating physician rule by improperly failing to accord plaintiff's treating physicians -- Drs. Taneja, Reddy and Publico -- controlling weight without an adequate explanation (Pl.'s Mem. at 15, 17, 18).  Notwithstanding the ALJ's statement that he was giving the opinions of plaintiff's treating physicians "little weight" (Tr. 27), she asserts that the ALJ failed to specify what weight was given to the opinions of Dr. Taneja and Dr. Reddy (Pl.'s Mem. at 15).  Plaintiff also contends that the ALJ failed to accord appropriate weight to Dr. Publico's findings and erred by rejecting his opinion as unsupported without first taking steps to develop the record (Pl.'s Mem. at 18-19).

The Commissioner responds that the opinions of Dr. Reddy and Dr. Taneja were considered by the ALJ and properly discounted because they were speculative and unsupported by the record (Comm'r Mem. at 17).  The Commissioner also claims that the ALJ properly discounted the opinion of Dr. Publico for the same reasons (Comm'r Mem. at 19), and that the ALJ had no duty to

request further information from Dr. Publico because the record already contained adequate evidence on which to assess his opinion (Comm'r Mem. at 20).

Under the treating physician rule, a treating physician's opinion will be given controlling weight under certain circumstances and, if not given controlling weight, must be assessed pursuant to a multi-factor test to determine what weight will be accorded to the opinion.  The applicable regulation provides:

> Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
>
> (i) Length of the treatment relationship and the frequency of examination. . . .

       (ii) <u>Nature and extent of the treatment relation-
ship</u>. . . .

    (3) <u>Supportability</u>.  The more a medical source presents
relevant evidence to support an opinion, particularly
medical signs and laboratory findings, the more weight
we will give that opinion. . . .

    (4) <u>Consistency</u>.  Generally, the more consistent an
opinion is with the record as a whole, the more weight
we will give to that opinion.

    (5) <u>Specialization</u>.  We generally give more weight to
the opinion of a specialist about medical issues re-
lated to his or her area of specialty than to the
opinion of a source who is not a specialist.

    (6) <u>Other factors</u>.  When we consider how much weight to
give to a medical opinion, we will also consider any
factors you or others bring to our attention, or of
which we are aware, which tend to support or contradict
the opinion. . . .

20 C.F.R. § 416.927(d)(2) (2011);[12] <u>Burgess v. Astrue</u>, <u>supra</u>, 537

F.3d at 128-29; <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir.

2004) (<u>per</u> <u>curiam</u>).  Thus, the assessment of a treating physi-

cian's opinion has been described by some courts as a two-step

process:  the ALJ must first determine if the treating physi-

cian's opinion is entitled to controlling weight, and, if it is

---

    [12]Effective March 26, 2012, Section 416.927(d) was re-
codified as 416.927(c), but with no substantive changes.  <u>See</u> <u>How</u>
<u>We Collect & Consider Evidence of Disability</u>, 72 Fed. Reg.
10,651, 10,657 (Feb. 23, 2012).  However, because other
provisions of the regulations were substantively amended, I apply
the version of the regulations in effect when the ALJ rendered
his decision.  <u>Lowry v. Astrue</u>, 474 F. App'x 801, 804 n.2 (2d
Cir. 2012).

not, the ALJ must then go on to determine the weight to which the opinion is entitled based on the factors listed above.  See Chrismon v. Colvin, 531 F. App'x 893, 900-01 (10th Cir. 2013); Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011); Warrick v. Colvin, No. 3:13-cv-00346, 2014 WL 2480589 at *10 (M.D. Tenn. June 03, 2014) (Report & Recommendation); Dean v. Astrue, No. 3:08cv00267, 2009 WL 2371505 at *10 (S.D. Ohio July 29, 2009) (adopting Report & Recommendation); see also SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996).  "[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight.  20 C.F.R. § 416.927(d)(2) (2011); Halloran v. Barnhart, supra, 362 F.3d at 32; see Schisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993).

When an ALJ determines that a treating source's opinion is not entitled to controlling weight, he must apply the factors set forth above to determine the amount of weight the opinion should be given.  See Norman v. Astrue, 912 F. Supp. 2d 33, 42 (S.D.N.Y. 2012) (Carter, D.J.) (adopting Report & Recommenda-tion); Ellington v. Astrue, supra, 641 F. Supp. 2d at 330; Rodriquez v. Astrue, 07 Civ. 534 (WHP)(MHD), 2009 WL 637154 at *20 (S.D.N.Y. Mar. 9, 2009) (Pauley, D.J.) (adopting Report & Recommendation).

25

                    a.  Consideration of the Opinions
                       of Drs. Reddy, Taneja and Publico

          The ALJ's discussion of the opinions of plaintiff's
treating sources was extremely limited and did not comply with
criteria set forth above.

          The ALJ's discussion of Dr. Publico was limited to the
following:  "Dr. Publico limits the claimant to less than seden-
tary based on a knee sprain as well as the claimant's other
impairments (Exhinbit 12F).  However, there are no other records
by Dr. Publico that support[] such restrictive physical limita-
tions, nor is there any explanation" (Tr. 27).   With respect to
Dr. Taneja, the ALJ noted only that Dr. Taneja "diagnosed the
claimant with major depressive disorder, and also identifies that
the claimant is in bimonthly group therapy, but indicates only
moderate limitations in social interaction as the claimant's most
significant limitation" (Tr. 27).  With respect to Dr. Reddy, the
ALJ wrote "Dr. Reddy . . . reports a fair prognosis and does not
identify any marked limitations . . ." (Tr. 27).[13]  After summa-
rizing other opinion evidence, the ALJ stated that he "considered
the assessments offered by the claimant's treating doctors (e.g.
Exhibit 12F).  Their opinions are not supported by objective

_____

          [13]The ALJ also listed the medications prescribed for
plaintiff by Dr. Reddy.

clinical findings, and are inconsistent with other substantial evidence.  Therefore, these opinions are accorded little weight" (Tr. 27).  The ALJ did not address how application of the factors identified above resulted in a determination that the treating sources opinions were entitled to only "little weight."

Even if the ALJ's conclusory discussion was sufficient to explain why the opinions of the treating sources were not entitled to controlling weight, it is insufficient to explain why the ALJ accorded them only "little weight."  The ALJ failed entirely to discuss any of the factors set forth above, and this fact alone warrants a remand.

> [U]nder the regulations, see 20 C.F.R. § 404.1527(d)(2), the Commissioner is required to provide "good reasons" for the weight she gives to the treating source's opinion.  See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).  This requirement greatly assists our review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

Halloran v. Barnhart, supra, 362 F.3d at 32-33; accord Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012) (noting that the Court of Appeals has "consistently held that the failure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand"); <u>Petrie v.</u>
<u>Astrue</u>, 412 F. App'x 401, 406 (2d Cir. 2011) ("When an ALJ
refuses to give controlling weight to the medical opinion of a
treating physician, he/she must consider various 'factors' in
deciding how much weight to give the opinion."); <u>Gunter v.</u>
<u>Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 199-200 (2d Cir. 2010)
(ALJ's rejection of a treating physician's opinion "'because it
is not consistent with the substantial evidence of record' . . .
fall[s] far short of the ALJ's duty to provide 'good reasons' for
rejecting a treating physician's opinion."); <u>Ellington v. Astrue</u>,
<u>supra</u>, 641 F. Supp. 2d at 330.

On remand, the ALJ should explain specifically not only
why he is not according the opinions of plaintiff's treating
physicians controlling weight but also why he is according them
"little weight."

        b.    Duty to
            <u>Develop the Record</u>

The ALJ's assessment of Dr. Publico's opinion is also
problematic because he failed to re-contact Dr. Publico regarding
the absence of supporting information in the record.  The ALJ has
"an affirmative obligation to fully develop the administrative
record."  <u>Calzada v. Astrue</u>, 753 F. Supp. 2d 250, 269 (S.D.N.Y.

2010) (Sullivan, D.J.) (adopting Report & Recommendation); Schaal
v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); see Tejada v. Apfel,
supra, 167 F.3d at 774.  "The non-adversarial nature of a Social
Security hearing requires the ALJ 'to investigate the facts and
develop the arguments both for and against granting benefits.'"
Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002)
(Gorenstein, M.J.), quoting Sims v. Apfel, 530 U.S. 103, 111
(2000).  This duty is even more important when the information
concerns a claimant's treating source.  Devora v. Barnhart,
supra, 205 F. Supp. 2d at 172-73; see 20 C.F.R. § 416.912(e)
(2011).

> [M]oreover, . . . an ALJ cannot reject a treating
> physician's diagnosis without first attempting to fill
> any clear gaps in the administrative record.  See
> Schaal, 134 F.3d at 505 ("[E]ven if the clinical find-
> ings were inadequate, it was the ALJ's duty to seek
> additional information from [the treating physician]
> sua sponte."); see also Hartnett v. Apfel, 21 F. Supp.
> 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives
> inconsistencies in a treating physician's reports, the
> ALJ bears an affirmative duty to seek out more informa-
> tion from the treating physician and to develop the
> administrative record accordingly.").  In fact, where
> there are deficiencies in the record, an ALJ is under
> an affirmative obligation to develop a claimant's
> medical history "even when the claimant is represented
> by counsel or . . . by a paralegal." Perez, 77 F.3d at
> 47; see also Pratts, 94 F.3d at 37 ("It is the rule in
> our circuit that 'the ALJ, unlike a judge in a trial,
> must [her]self affirmatively develop the record' in
> light of 'the essentially non-adversarial nature of a
> benefits proceeding.'  This duty . . . exists even when
> . . . the claimant is represented by counsel.") (cita-
> tions omitted) (alterations in original).

Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Butts v.
Barnhart, supra, 388 F.3d at 386; Echevarria v. Sec'y of Health &
Human Servs., 685 F.2d 751, 755 (2d Cir. 1982); Norman v. Astrue,
supra, 912 F. Supp. 2d at 42; Vega v. Astrue, 08 Civ. 1525
(LAP)(GWG), 2010 WL 2365851 at *2 (S.D.N.Y. June 10, 2010)
(Preska, C.J.); Rivera v. Comm'r of Soc. Sec., 728 F. Supp. 2d
297, 321-22 (S.D.N.Y. 2010) (Sullivan, D.J.) (adopting Report &
Recommendation).

In plaintiff's case, the ALJ noted that "Dr. Publico
limits the claimant to less than sedentary [work] based on a knee
sprain as well as claimant's other impairments (Exhibit 12F).
However, there are no other records by Dr. Publico that support[]
such restrictive physical limitations, nor is there any explana-
tion" (Tr. 27).  The ALJ found that Dr. Publico's opinion should
be accorded limited weight because it was "not supported by
objective clinical findings" (Tr. 27).  The ALJ appears to have
discredited Dr. Publico's conclusions regarding plaintiff's
functional limitations by relying on the absence of either
supporting documents in the record by Dr. Publico or a more
expansive discussion by Dr. Publico in the report itself (see Tr.
27).  Dr. Publico's questionnaire appears to refer to prior
examinations on June 3, 2009 and November 24, 2009 (see Tr. 501),
but there are no records or notes from these examinations in the

30

record.  There is no indication in the record that, before
discounting Dr. Publico's opinion, the ALJ requested Dr.
Publico's treatment records or re-contacted Dr. Publico in order
to clarify the doctor's conclusions.

The Commissioner argues that there was no need to re-
contact Dr. Publico because her report contains adequate informa-
tion for the ALJ to assess plaintiff's alleged disability (Comm'r
Mem. at 20).  However, there is clearly not enough information in
Dr. Publico's report for the ALJ to perform the analysis neces-
sary to determine the weight to be accorded to a treating physi-
cian's opinion, had the ALJ attempted to do so.  The parties
disagree over the length of Dr. Publico's treatment (see Pl.'s
Mem. at 19; Comm'r Mem. at 19), one of the factors that is
required to be considered under the treating physician rule, see
20 C.F.R. § 416.927(d)(2)(i) (2011).  The report is also unclear
as to how often or what treatment Dr. Publico provided.  The only
condition listed in her report that was not diagnosed "by his-
tory" appears to be chronic pain, but there is no further infor-
mation on this general symptom (see Tr. 501).  Moreover, it is
unclear whether the limitations Dr. Publico (a physiatrist) found
are due to physical rather than mental conditions.

The ALJ was obligated to clarify these gaps in the
record.  See e.g., Rosa v. Callahan, supra, 168 F.3d at 79-80.

31

The physical evidence in this case is far from conclusive.  Cf. Perez v. Chater, supra, 77 F.3d at 48 (no need for remand to re-contact physician who ordered CT and MRI tests when those tests provided adequate information to determine lack of disability). Because the ALJ failed to request additional information, he "was left to base [his] conclusions on incomplete information." See Rosa v. Callahan, supra, 168 F.3d at 79-80.  It was incumbent on the ALJ to obtain the treatment notes or to re-contact Dr. Publico regarding the conclusions in her questionnaire before rejecting her opinion as insufficiently supported.  See Rosado v. Barnhart, 290 F. Supp. 2d 431, 440 (S.D.N.Y. 2003) (Marrero, D.J.) ("The ALJ cannot rely on the absence of evidence, and is thus under an affirmative duty to fill any gaps in the record." (emphasis in original)); Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (Scheindlin, D.J.).

The above legal errors regarding the application of the treating physician rule and the duty to develop the record warrant remand.  See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide explicit 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."); Calabrese v. Astrue, 592 F. Supp. 2d 379, 385 (W.D.N.Y. 2009), aff'd, 358 F. App'x 274 (2d Cir. 2009) (legal errors are grounds for remand).

2.   Plaintiff's
     Credibility

Plaintiff also claims that the ALJ erred in assessing
her credibility when he failed to provide specific reasons for
his findings (Pl.'s Mem. at 21).  In addition, plaintiff asserts
that the ALJ applied the incorrect legal standard when making the
credibility determination (Pl.'s Mem. at 21).  The Commissioner
responds that the ALJ did in fact provide specific reasons for
discrediting plaintiff's testimony (Comm'r Mem. at 21) and that
the legal standard the ALJ employed when making this determina-
tion was correct, notwithstanding any boilerplate language
(Comm'r Mem. at 23).

a.   Credibility
     Assessment

It is "within the discretion of the [Commissioner] to
evaluate the credibility of plaintiff's complaints and render an
independent judgment in light of the medical findings and other
evidence regarding the true extent of such symptomatology."
Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995)
(Leisure, D.J.); accord Mimms v. Heckler, 750 F.2d 180, 186 (2d
Cir. 1984); Evans v. Astrue, 783 F. Supp. 2d 698, 710-11
(S.D.N.Y. 2011) (Gorenstein, M.J.); see Aponte v. Sec'y, Dep't of

Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984); Carroll
v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir.
1983).  When determining a claimant's RFC, the ALJ is required to
take the claimant's reports of pain and other limitations into
account.  20 C.F.R. § 416.929; see McLaughlin v. Sec'y of Health,
Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980).  The ALJ is
not required to accept the claimant's subjective complaints; he
may exercise discretion in weighing the credibility of the
claimant's testimony in light of the other evidence in the
record.  Gernavage v. Shalala, supra, 882 F. Supp. at 1419;
accord Mimms v. Heckler, supra, 750 F.2d at 186; Richardson v.
Astrue, 09 Civ. 1841(SAS), 2009 WL 4793994 at *6 n.97 (S.D.N.Y.
Dec. 14, 2009) (Scheindlin, D.J.).

> The regulations provide a two-step process for evaluat-
> ing a claimant's assertions of pain and other limita-
> tions.  At the first step, the ALJ must decide whether
> the claimant suffers from a medically determinable
> impairment that could reasonably be expected to produce
> the symptoms alleged.  20 C.F.R. § 404.1529(b).  That
> requirement stems from the fact that subjective asser-
> tions of pain alone cannot ground a finding of disabil-
> ity.  20 C.F.R. § 404.1529(a).  If the claimant does
> suffer from such an impairment, at the second step, the
> ALJ must consider "the extent to which [the claimant's]
> symptoms can reasonably be accepted as consistent with
> the objective medical evidence and other evidence" of
> record.  Id.

Genier v. Astrue, supra, 606 F.3d at 49 (emphasis in original).

The ALJ must explain his decision to reject plaintiff's statements "'with sufficient specificity to enable the [review-ing] Court to decide whether there are legitimate reasons for the ALJ's disbelief' and whether his decision is supported by sub-stantial evidence." Calzada v. Astrue, supra, 753 F. Supp. 2d at 280, quoting Fox v. Astrue, 6:05-CV-1599 (NAM/DRH), 2008 WL 828078 at *12 (N.D.N.Y. Mar. 26, 2008).  "The reasons for the credibility finding must be grounded in the evidence and articu-lated in the determination or decision."  SSR 96-7p, 1996 WL 374186 at *4 (July 2, 1996); Genier v. Astrue, supra, 606 F.3d at 49; Alcantara v. Astrue, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009) (Sullivan, D.J.) (adopting Report & Recommendation).  The ALJ must specifically consider particular factors, including:  (1) plaintiff's "daily activities," (2) "location, duration, fre-quency, and intensity" of plaintiff's symptoms, (3) "[f]actors that precipitate and aggravate" plaintiff's symptoms, (4) "type, dosage, effectiveness, and side effects of any medication" plaintiff takes for her symptoms, (5) other treatment plaintiff receives for relief from her symptoms, (6) "[a]ny measures other than treatment" plaintiff uses for relief from her symptoms and (7) "[a]ny other factors" regarding plaintiff's limitations resulting from her symptoms.  SSR 96-7p, supra, at *3.

35

There is no such discussion in the ALJ's opinion in this case (see Tr. 26).  Here, the ALJ's analysis of plaintiff's statements regarding her impairments consists entirely of the following:  "The undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC assessment" (Tr. 26).  These statements are unaccompanied by any analysis of the factors relevant to assessing the credibility of plaintiff's statements as required by the regulations, 20 C.F.R. § 416.929(c), or any specifics regarding how plaintiff's statements were inconsistent with the medical record.  Such a perfunctory evaluation of plaintiff's credibility is insufficient.  See Kane v. Astrue, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013); Seabrook v. Astrue, 11 Civ. 5642 (GBD)(KNF), 2013 WL 1340134 at *3 (S.D.N.Y. Mar. 26, 2013) (Daniels, D.J.) (adopting Report & Recommendation); Maline v. Astrue, 08-CV-1712 (NGG)(CP), 2010 WL 4258259 at *5 (E.D.N.Y. Oct. 21, 2010).

The Commissioner argues that other portions of the ALJ's decision reference plaintiff's daily activities and her prescribed medications, which are two factors relevant to assessing the credibility of plaintiff's statements regarding the

severity and limiting effects of her symptoms (Comm'r Mem. at

22).  Bare references, especially references scattered throughout

the ALJ's opinion, cannot stand in the place of the required

analysis.  See SSR 96-7p, supra, at *2 ("It is not sufficient for

the adjudicator to make a single, conclusory statement that 'the

individual's allegations have been considered' or that 'the

allegations are (or are not) credible.'").

        b.   Credibility
           Standard

It also appears that the ALJ used an incorrect legal

standard to evaluate plaintiff's credibility.  The ALJ wrote that

"the claimant's statements concerning the intensity, persistence

and limiting effects of [her] symptoms are not credible to the

extent they are inconsistent with the above RFC assessment" (Tr.

26).  This language suggests that the ALJ "made a determination

with respect to plaintiff's overall RFC and then used that RFC to

discount plaintiff's non-conforming allegations and resulting

limitations." Norman v. Astrue, supra, 912 F. Supp. 2d at 86.

Such analysis constitutes legal error.  As the Honorable Andrew

J. Peck, United States Magistrate Judge, has explained:

> In order to take proper account of the claimant's
> symptoms, the ALJ should first determine the extent to
> which the claimant's symptoms are credible in light of
> the objective record evidence, and then use that find-

> ing as one aspect of the RFC analysis.  Determining the
> RFC first and then measuring the claimant's credibility
> by that yardstick reverses the standard in a way that
> is not only illogical, but also prejudicial to the
> claimant.

Cruz v. Colvin, 12 Civ. 7346 (PAC)(AJP), 2013 WL 3333040 at *16

(S.D.N.Y. July 2, 2013) (Peck, M.J.) (Report & Recommendation);

Norman v. Astrue, supra, 912 F. Supp. 2d at 44, citing Meadors v.

Astrue, 370 F. App'x 179, 184 (2d Cir. 2010); see also Taylor v.

Comm'r of Soc. Sec., 13 Civ. 5995(VB), 2014 WL 2465057 at *12

(S.D.N.Y. May 21, 2014) (Briccetti, D.J.) (adopting Report &

Recommendation); Agapito v. Colvin, 12 Civ. 2108 (PAC)(HBP), 2014

WL 774689 at *22 (S.D.N.Y. Feb. 20, 2014) (Crotty, D.J.) (adopt-

ing Report & Recommendation); Seabrook v. Astrue, supra, 2013 WL

1340134 at *3.

The Commissioner argues that various decisions from

this Circuit have held to the contrary and cites three cases in

support of this contention (Comm'r Mem. at 23).  But in each of

those cases, the Court found no legal error notwithstanding the

language that plaintiff's statements were not "credible to the

extent they are inconsistent with the RFC" because the ALJ had

engaged in detailed analysis that showed that plaintiff's state-

ments were considered before the ALJ made an RFC determination.

See Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 318 (W.D.N.Y.

2013) ("The ALJ specifically stated that she assessed Diako-

giannis's statements concerning the intensity, persistence and limiting effects of his symptoms '[a]fter careful consideration of the evidence.'"); Luther v. Colvin, 12-CV-6466, 2013 WL 3816540 at *7-*8 (W.D.N.Y. July 22, 2013) (finding proper credibility assessment when the ALJ had engaged in lengthy and detailed analysis of claimant's credibility); Briscoe v. Astrue, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) (Gorenstein, M.J.) ("[T]his statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility.  Instead, the ALJ's decision discusses in detail the aspects of Briscoe's testimony that were contradicted by other evidence in the record, and explains which aspects of Briscoe's testimony he found credible. Only after this analysis does the ALJ assess the remaining evidence relevant to Briscoe's RFC." (citations omitted)).

Where, as here, the ALJ has provided no analysis from which it can be determined whether the ALJ considered plaintiff's credibility before or after making an RFC determination, the ALJ has committed legal error.  See e.g., Taylor v. Comm'r of Soc. Sec., supra, 2014 WL 2465057 at *12; Box v. Colvin, 12-CV-1317 (ADS), 2014 WL 997553 at *21 (E.D.N.Y. Mar. 14, 2014); Agapito v. Colvin, supra, 2014 WL 774689 at *22; Wojciechowski v. Colvin, 967 F. Supp. 2d 602, 612-13 (N.D.N.Y. 2013) (adopting Report & Recommendation); Norman v. Astrue, supra, 912 F. Supp. 2d at 86.

Accordingly, I conclude that the ALJ's credibility assessment also warrants a remand.

### 3. Additional Evidence

Plaintiff submitted additional evidence to the Appeals Council after the ALJ's decision (see Tr. 4).  The additional evidence included Impairment Questionnaires from Dr. Rosen (Tr. 796-803) and Dr. Wiegand (Tr. 807-14), both of whom were plaintiff's treating psychiatrists, as well as a Wellness Report from Dr. Rosen (Tr. 805-06).

Plaintiff argues that the new evidence submitted to the Appeals Council after the ALJ's decision "makes clear that the ALJ's mental RFC finding for Ms. Barnwell is not supported by substantial evidence" (Pl.'s Mem. at 23).  The Commissioner responds that the new evidence would not have changed the ALJ's decision (Comm'r Mem. at 24-25).

Here, the Appeals Council did consider the new evidence from Dr. Rosen and Dr. Wiegand when determining whether to grant review (Tr. 1-2; Pl.'s Mem. at 23; Comm'r Mem. at 24), and the parties do not dispute that the Appeals Council should have done so.  Instead, they dispute whether the additional evidence establishes that there was a lack of substantial evidence for the

ALJ's decision and that a remand is warranted (see Pl.'s Mem. at 23; Comm'r Mem. at 25).  I need not decide whether the ALJ's decision was supported by substantial evidence, as legal error requires remand.  See Schaal v. Apfel, supra, 134 F.3d at 504; Johnson v. Bowen, supra, 817 F.2d at 986.

Here, the Appeals Council merely stated in its denial that "we considered . . . the additional evidence" (Tr. 1).  A more detailed assessment of the additional evidence is required. "When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence."  Flowers v. Comm'r of Soc. Sec., supra, 441 F. App'x at 745, quoting Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980). Because the additional evidence at issue here is from treating sources, the Appeals Council was required to comply with the regulations applicable to the assessment of opinions from treating sources.  See Shrack v. Astrue, supra, 608 F. Supp. 2d at 302, citing Snell v. Apfel, supra, 177 F.3d at 134; see also Farina v. Barnhart, 04-CV-1299 (JG), 2005 WL 91308 at *5 (E.D.N.Y. Jan. 18, 2005) (remanding because "Appeals Council makes no mention of this new evidence in its denial of review, and does not provide the type of explanation required under the treating physician rule").

41

On remand, the ALJ should analyze Dr. Rosen and Dr. Wiegan's reports pursuant to the rules applicable to treating sources.  The ALJ need only consider these sources to the extent that they relate to the relevant period.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for judgment on the pleadings in granted (Docket Item 11), and the Commissioner's cross-motion is denied (Docket Item 24). The case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The Clerk of the Court is directed to close the case.

Dated:  New York, New York
        September 19, 2014

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Charles E. Binder, Esq.
Binder and Binder P.C.
Suite 520
60 East 42nd Street
New York, New York  10165

42

Sixtina Fernandez, Esq.
Special Assistant United States Attorney
Southern District of New York
Suite 3904
26 Federal Plaza
New York, New York   10278